**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 08-CR-669 |
| v. ) | Honorable David H. Coar |
| ) | |
| JOHN RAMIN and TAHIR RAMIN, et al. ) | |
| ) | |
| Defendants. ) | |

**JOHN RAMIN AND TAHIR RAMIN'S MOTION TO DISMISS**

Pursuant to Fed. R. Crim. Pro. 12(b)(3)(B), Defendants John Ramin and Tahir Ramin (the "Ramins") respectfully move for the dismissal of Counts I, III, X, XI, and XIV asserted against them in the Superseding Indictment of June 12, 2009. By charging only conduct that occurred outside the United States, the Superseding Indictment fails to allege the essential facts necessary to establish this Court's jurisdiction over the Ramins. In addition, the Ramins were not given adequate notice, in violation of their rights under the Due Process Clause of the Fifth Amendment, that their actions undertaken entirely outside the United States were proscribed by the charging statutes.

**I.    PRELIMINARY STATEMENT**

None of the allegations asserted against the Ramins are stated to have occurred in the United States. Because extraterritorial application of United States law absent a clear indication of congressional intent is disfavored, criminal statutes do not apply outside the borders of the United States unless the crimes they seek to combat by definition involve foreign conduct. None of the charging statutes asserted against the Ramins target such crimes. Instead, all statutory counts asserted against the Ramins – conspiracy under 18 U.S.C. § 371, bribery under 18 U.S.C.

1

§ 201(b)(1), and conspiracy under 18 U.S.C. § 1349 – focus on domestic criminal activity. As such, there is no legal basis to infer that, in enacting these statutes, Congress intended to reach beyond the United States' borders and criminalize conduct taking place solely or substantially on foreign territory.

The Superseding Indictment alleges that all the actions charged against the Ramins occurred "in Afghanistan or elsewhere." The Government makes no allegations whatsoever that *any* of the Ramins' actions had an impact (must less a substantial impact) in the United States. The Superseding Indictment therefore utterly fails to allege the necessary jurisdictional nexus to activity within the United States.

Given the established principle that, absent manifest congressional intent, the United States law does not apply to conduct abroad, the Ramins lacked notice that their actions in Afghanistan were subject to U.S. criminal prohibitions. The Due Process Clause of the Fifth Amendment to United States Constitution requires that the criminal statutes provide clear warning of the prohibited conduct. In the absence of such warning, the criminal statute is unconstitutionally vague. Because none of the statutes that the Ramins are alleged to have violated was intended to apply to conduct occurring solely in Afghanistan, the charges against the Ramins must be dismissed.

## II. FACTUAL BACKGROUND

Mr. Ramin, along with his co-defendant Tahir Ramin, was an owner of the AZ Corporation, a construction firm in Afghanistan. Indictment ¶ 4. AZ Corporation received construction and transport contracts from the United States Department of Defense ("DOD"), including from the DOD facility at the Bagram Airfield ("BAF"). *Id.*

On August 25, 2008, having been ostensibly invited to attend a private event in the United States, Tahir Ramin was arrested upon entry into the United States at O'Hare Airport in Chicago. The arrest was made pursuant to an indictment returned on August 21, 2008, and unsealed on August 27, 2008. On June 19, 2009, the grand jury returned a superseding indictment. The Superseding Indictment alleges that John Ramin paid the other defendants, Christopher P. West and Patrick Boyd, as well as unnamed co-conspirators, $30,000 in return for the award of a contract to supply BAF with bunkers and barriers. *See, e.g.*, Superseding Indictment, ¶¶ 16, 19, 27, 107. Specifically, the Ramins were indicted on the charges of conspiracy to defraud the United States under 18 U.S.C. § 371 (Counts I and X), bribery of a public official under 18 U.S.C. § 201(b)(1) (Counts III and XI), and conspiracy to defraud the United States of the honest services of its public officials under 18 U.S.C. § 1349 (Count XIV).

Notably, the Superseding Indictment contains no allegations that any of the charged conduct occurred within the United States and virtually no allegations that this conduct had any connection with, or impact upon, the United States. Thus, Count I alleges that the charged acts of conspiracy among the Ramins, Christopher West, Patrick Boyd, and TOP'S Construction occurred "in Afghanistan and elsewhere." Superseding Indictment, ¶ 8. Similarly, Count III charges that the alleged acts of bribery by the Ramins, and TOP'S Construction took placed "in Afghanistan and elsewhere." *Id.*, ¶ 27. In identical language, Count X alleges that the charged conspiracy among the Ramins and a variety of other individuals and entities occurred "in Afghanistan and elsewhere." *Id.*, ¶ 70. Count XI again recites that all alleged acts of bribery committed by the Ramins and others occurred "in Afghanistan and elsewhere." *Id.*, ¶ 107. Finally, Count XIV contains the same recitation, charging the Ramins and other defendants with

3

conspiring "in Afghanistan and elsewhere" to devise a scheme to defraud the United States. *Id.*, ¶ 110.

The Superseding Indictment makes at best a cursory effort to suggest a connection between the Ramins' conduct and the United States. Counts I, III, X, and XI allege no such connection whatsoever. Count XIV is the only one that alleges an attenuated connection. The count alleges that, for the purpose of executing a scheme to defraud the United States of its public officials' "honest services," the Ramins and others "place[d] in a post office and authorized depositary for mail matter a thing to be sent and delivered by the Postal Service, and deposited and cause to be deposited a thing to be send and delivered by commercial interstate carrier." *Id.*, ¶ 110. Count XIV further alleges that the defendants conspired to "[s]end the money received from AZ, TOP's, NRO, and NBC hidden in boxes to the United States through the Postal Service and through commercial interstate carrier." *Id.*, ¶ 118. Aside from these undifferentiated allegations against all nine defendants charged in Count XIV, the Superseding Indictment does not allege any specific acts by the Ramins themselves connecting his conduct to the United States.

**III. ARGUMENT**

**A. The Charges Against The Ramins Must Be Dismissed Because the Charging Statutes Do Not Proscribe the Conduct that Occurs Solely on Foreign Territory and Has No Effects on the United States.**

As the Supreme Court explained, "[i]t is a long-standing principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'" *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991) (quoting *Foley Bros v. Filardo*, 336 U.S. 281, 285 (1949)). On numerous occasions, the Supreme Court and the Seventh Circuit reaffirmed "the legal presumption that Congress

4

ordinarily intends its statutes to have domestic, not extraterritorial, application." *Small v. United States*, 544 U.S. 385, 388-89 (2005); *see also Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 173-75 (1993); *Benz v. Compania Naviera Hidalgo, S.A.*, 353 U.S. 138, 147 (1957); *Glass v. Kemper Corp.*, 133 F.3d 999, 1000 (7th Cir. 1998) ("federal statutes presumptively lack extraterritorial reach"); *United States v. Dawn*, 129 F.3d 878, 882 (7th Cir. 1997).

Because this presumption serves to effectuate important goal of preventing "unintended clashes between our laws and those of other nations which could result in international discord," the Supreme Court instructed that a federal statute may be applied to conduct occurring abroad only when such application comports with "'the affirmative intention of the Congress clearly expressed.'" *Aramco*, 499 U.S. at 248 (quoting *Benz*, 353 U.S. at 147); *see also Sale*, 509 U.S. at 176, 188 (Congress's intent for the statute to apply extraterritorially must be "clearly manifested" by "affirmative evidence of intended extraterritorial application"); *Smith*, 507 U.S. at 204 (extraterritorial application of a federal statute requires "clear evidence of congressional intent") (internal quotation marks and citation omitted); *Dawn*, 129 F.3d at 882 (same). To satisfy this demanding standard and overcome the presumption against extraterritoriality, the Government must identify "specific language" in the statute that "definitely disclose[s] an intention to give it extraterritorial effect." *Aramco*, 499 U.S. at 251-52 (internal quotation marks and citation omitted).

Here, the text of the charging statutes evinces no intention that they be applied extraterritorially. The two conspiracy provisions under which the Ramins are charged, 18 U.S.C. § 371 and 18 U.S.C. § 1349, refer only to "two or more persons" or "[a]ny person," respectively. "[T]he statutory phrase 'any person' may or may not mean to include 'persons' outside the jurisdiction of the state," *Small*, 544 U.S. at 388, and therefore this broad language is insufficient

5

to indicate congressional intent to apply the statute abroad, *Aramco*, 499 U.S. at 251-52. *See also United States v. Mitchell*, 553 F.2d 996, 1004 (5th Cir. 1977) ("all inclusive language that does not expressly address territoriality cannot be held to indicate clear intent for extraterritorial application").

Similarly, the statute criminalizing bribery of public officials, 18 U.S.C. § 201, contains no language manifesting clear congressional intent to cover conduct occurring abroad alongside that within the United States. For reasons explained above, the statute's general reference to "[w]hoever" commits the proscribed acts is too broad to satisfy the Supreme Court's insistence that the statutory language be specific.[1] Moreover, the bribery statute's definition of the term "public official" further indicates that Congress did not intend to apply the statute extraterritorially. The statute defines that term to mean "Member of Congress, Delegate, or Resident Commissioner, . . . or an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia." 18 U.S.C. § 201(a)(1). As this definition indicates, the statute is concerned with the bribery of officials within the United States; the statute does not list any U.S. officials who typically act abroad, such as ambassadors or consuls.[2]

In certain instances, relying on *United States v. Bowman*, 260 U.S. 94 (1922), courts have relaxed the extraterritoriality presumption with respect to some criminal statutes. In *Bowman*,

---

[1] For the same reason, the reference to "[w]hoever" in the mail fraud statute, 18 U.S.C. § 1341, that the Ramins are alleged to have conspired to violate, Superseding Indictment, ¶ 110-19 (Count XIV), also falls short of rebutting the presumption against extraterritoriality. In fact, one district court has concluded, albeit in a civil context, that the mail fraud statute does not apply extraterritorially. *Markey v. Kudelski*, 2008 WL 65401, at *12 n.9 (S.D. Cal., Jan. 3, 2008).

[2] To the extent such officials may be encompassed by the broad statutory reference to "any officer of employee [of] any department, agency or branch of Government," 18 U.S.C. § 201(a)(1), such indiscriminate language does not meet the Supreme Court's requirement that congressional language be *clear* and *specific*. *See Aramco*, 499 U.S. at 251-52.

the Supreme Court acknowledged the presumption against extraterritorial application, but observed that "the same rule of interpretation should not be applied to criminal statutes which are, as a class, not logically depended on their locality for the government's jurisdiction" and where "Congress has not thought it necessary to make specific provision in the law that the locus shall include the high seas and foreign countries, but allows it to be inferred from the nature of the offense." 260 U.S. at 97-98.

*Bowman*, however, only holds that, as a matter of statutory construction, a class of statutes where "[t]he natural inference from the character of the offense is that [an extraterritorial location] would be a probable place for its commission" should be given the intended effect. *Bowman*, 260 U.S. at 99. In these instances, courts can "infer[] from the nature of the offense" that "the locus shall include the high seas and foreign countries." *Id.*, at 98.[3] Thus, "courts do not apply the territorial presumption where it is not a reliable guide to congressional intent." *United States v. Corey*, 232 F.3d 1166, 1170 (9th Cir. 2000).

Accordingly, lower courts have applied *Bowman* to eliminate the presumption against extraterritoriality only with respect to criminal statutes targeting conduct that, by definition, crosses the international borders of the United States so that a significant portion of that conduct occurs abroad. *See, e.g.*, *United States v. Villanueva*, 408 F.3d 193, 197-99 (5th Cir. 2005) (smuggling of illegal aliens into the United States); *United States v. Yousef*, 327 F.3d 56, 86-88

---

[3] The specific statutory prohibitions that the *Bowman* Court considered illustrate its limited holding. For instance, the Court construed a statute that "punishe[d] whoever as *consul* knowingly certifies a false invoice," observing that "[c]learly the locus of this crime as intended by Congress is in a foreign country." 260 U.S. at 99 (emphasis added). Similarly, the Court addressed a prohibition on "[f]orging or altering *ship's papers*," and concluded that "[t]he natural inference from the character of the offense is that the sea would be a probable place for its commission." *Id.* (emphasis added). Although *Bowman* considered statutes that criminalized fraud and conspiracy to commit fraud against the United States, *id.*, at 96-97, it was the Court's construction of the specific congressional intent behind these statutes that allowed their extraterritorial application.

7

(2d Cir. 2003) (conspiracy to place bombs aboard aircraft); *United States v. Plummer*, 221 F.3d 1298, 1304-06 (11th Cir. 2000) (smuggling of contraband into the United States); *United States v. Vasquez-Velasco*, 15 F.3d 833, 837-41 (9th Cir. 1994) (commission of a murder abroad in furtherance of international drug trafficking).

Admittedly, some federal courts read *Bowman* more broadly, construing it to exempt from the extraterritoriality presumption "[s]tatutes prohibiting crimes *against the United States government*," *see United States v. Gatlin*, 216 F.3d 207, 211 n.5 (2d Cir. 2000), or even criminal statutes more generally, *see United States v. Baker*, 609 F.2d 134 (5th Cir. 1980) (possession of drugs abroad with intent to distribute). While courts have disagreed about the extent of *Bowman*'s reach, *see, e.g.*, *United States v. Martinelli*, 62 M.J. 52, 58 (Ct. App. Armed Forces 2005) (criticizing the broad reading of *Bowman*), an interpretation of *Bowman*'s exemption that limits its application to criminal statutes targeting conduct that, by its nature, involves foreign countries best aligns this case with the overall presumption against extraterritoriality.[4] As the Eleventh Circuit explained:

> Although the completed crime of smuggling does require some
> conduct within the U.S. territory, smuggling is quintessentially an
> international crime, and the acts constituting an attempt to smuggle
> are not 'logically dependent on their locality.' On the contrary,
> those acts are as likely, if not more likely, to occur beyond U.S.
> territory as they are to occur within U.S. territory. Smuggling
> itself necessarily involves activities outside U.S. territory, and the
> accomplishment of the crime always requires some action in
> foreign countries or international waters.

---

[4] Indeed, some courts expressed doubt about the continuing validity of *Bowman*, given its tension with the more recent Supreme Court precedent. *See Kollias v. D&G Marine Maintenance*, 29 F.3d 67, 71 (2nd Cir. 1994).

8

*Plummer*, 221 F.3d at 1305 (quoting *Bowman*, 260 U.S. at 98); *see also Vasquez-Velasco*, 15 F.3d at 840-41 (*Bowman* applies to statutes targeting a crime that "by its nature involves foreign countries").

Here, by contrast, the charging statutes do not target any "quintessentially [] international crime" or a crime that "by its nature involves foreign countries." On the contrary, the statutes prohibiting bribery of public U.S. officials, 18 U.S.C. § 201, or the statutes criminalizing conspiracy to defraud the United States, 18 U.S.C. §§ 371, 1349, are intended to apply to domestic conduct. Nothing about these crimes "requires some action in foreign countries or international waters." *Plummer*, 221 F.3d at 1305. Accordingly, the *Bowman* exception from the traditional presumption against extraterritoriality is inapplicable in this case.

The Superseding Indictment contains no allegations sufficient to render the Ramins' conduct "domestic" within the meaning of the charging statutes. With respect to Counts I, III, X, and XI, the Government does not allege any facts that could constitute any conceivable nexus between the Ramins' conduct and domestic U.S. activity. In fact, the Superseding Indictment expressly states that all charged conduct occurred "in Afghanistan or elsewhere." *See supra* 3-4. With respect to Count XIV, the only allegation of a connection between the charged conduct and the United States is the charge that the defendants conspired to "[s]end the money received from AZ, TOP's, NRO, and NBC hidden in boxes to the United States through the Postal Service and through commercial interstate carrier." *Id.*, ¶ 118. This allegation, even if true, is not sufficient to support jurisdiction because it falls far short of "'conduct outside [the United States] territory that has or is intended to have substantial effect within its territory.'" *In re Hijazi*, __ F.3d __, 2009 WL 4723277, at *10 (7th Cir. 2009) (quoting *Restatement (Third) of Foreign Relations* § 402 (1987)). "Minimal contact with the United States should not automatically render conduct domestic," *In re French*, 440 F.3d 145, 149 (4th Cir. 2006); instead, a court considers "'the

9

extent to which the activity takes place within the territory, or has substantial, direct, and foreseeable effect upon or in the territory.'" *In re Hijazi*, 2009 WL 4723277, at *10 (quoting *Restatement* § 402). As the Seventh Circuit observed, in a case of a foreign national indicted on federal fraud-related charges, these principles can be applied to a criminal prosecution. *Id.* (citing *United States v. Nippon Paper Indus. Co.*, 109 F.3d 1 (1st Cir. 1997)).

The Government makes no allegations whatsoever to establish that *any* of the Ramins' actions had occurred in the United States or had the requisite connection to the United States. Because an allegation of jurisdictional facts is a necessary part of an indictment, *see, e.g.*, *United States v. Cina*, 699 F.2d 853, 861 (7th Cir. 1983); *United States v. Della Rose*, 278 F. Supp. 2d 928, 933 n.2 (N.D. Ill. 2003); *United States v. Mallory*, 884 F. Supp. 496, 499 (S.D. Fla. 1995), the Superseding Indictment must be dismissed.[5]

> **B.** **Because The Ramins Lacked Notice that Their Actions Were Subject to United States Criminal Law, the Superseding Indictment Violates the Due Process Clause of the Fifth Amendment to the United States Constitution.**

Under the Due Process Clause of the Fifth Amendment, a statute must be declared void if it is so vague that "men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926). "The void for vagueness doctrine rests on the basic principle of due process that a law is unconstitutional 'if its prohibitions are not clearly defined.'" *Karlin v. Foust*, 188 F.3d 446, 458 (7th Cir.1999) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). A statute can be invalidated as unconstitutionally vague on an "as applied" challenge if the defendant had not "'receive[d] fair warning of the criminality of his own conduct from the statute in question.'" *United States v.*

---

[5] Should this Court not dismiss the Superseding Indictment for lack of jurisdictional allegations at this stage in the proceedings, the Ramins respectfully requests that the Court order the Government to produce a transcript of the grand jury proceedings to enable the Ramins to determine how the grand jury was instructed on the issue of jurisdiction.

*Black*, 469 F. Supp. 2d 513, 530 (N.D. Ill. 2006) (quoting *Parker v. Levy*, 417 U.S. 733, 756 (1974)).

As explained above, the longstanding Supreme Court case-law firmly holds that, absent manifest congressional intent to the contrary, the United States statutes do not apply to conduct taking place exclusively abroad or having only a minimal connection with the United States. The specific statutes under which the Ramins are charged were not intended to apply to conduct entirely unconnected (or only superficially linked) to domestic activities within the United States. The Ramins were therefore not on notice that his actions "in Afghanistan and elsewhere," but *not* in the United States, would be subject to U.S. criminal prohibitions. Consequently, the Ramins did not "receive fair warning of the criminality of [their] own conduct from the statute[s] in question." *Parker v. Levy*, 417 U.S. 733, 756 (1974). In the absence of such warning, the charges against the Ramins are unconstitutionally vague and must be dismissed.

## IV. CONCLUSION

For reasons stated above, the Court should grant this motion and order the Superseding Indictment dismissed.

DATED: December 18, 2009

| Respectfully submitted, | Respectfully Submitted, |
|---|---|
| /s/ Kirby D. Behre | /s/ Bradley J. Bolerjack |
| Kirby D. Behre<br>Paul, Hastings, Janofsky & Walker LLP<br>875 15th Street, NW<br>Washington, DC 20001<br>202.551.1700<br><br>*kirbybehre@paulhastings.com* | Steven A. Miller<br>Bradley J. Bolerjack<br>REED SMITH LLP<br>10 South Wacker Drive, Suite 4000<br>Chicago, IL 60606<br>(312) 207-2411<br>*bbolerjack@reedsmith.com* |

LEGAL_US_E # 86105587.5