IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 08 CR 669 |
| v. ) | |
| CHRISTOPHER WEST et al., ) | JUDGE DAVID H. COAR |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Defendants John Ramin and Tahir Ramin ("Defendants") are two of multiple defendants indicted for acts of bribery and corruption at Bagram Air Force Base, Afghanistan, in violation of 18 U.S.C. § 371, 201(b)(1), 201(b)(2), and 1349. Before this Court is Defendants' Joint Objections to the Magistrate's Decision Barring Economic Coercion Evidence [476]. Defendants have adopted the general position that, because they were victims of extortion at the hands of U.S. servicemen, they did not "*corruptly* give[], offer[] or promise[] anything of value to any public official . . . *to influence any official act*," as required by 18 U.S.C. §§ 201(b) (emphasis added).[1] On December 18, 2009, the Government filed a motion in limine to exclude improper examination, evidence, and argument regarding economic duress [355]. On April 5, 2010, Judge Ashman granted the motion. He held that "economic coercion cannot be an affirmative defense to bribery or mail fraud, nor can it negate the intent of the party charged with

---

[1] As defense counsel has stated, "[i]t is our defense that . . . our clients . . . are the victim of an extortion scheme by the military personnel in this case and others at Bagram Air Force Base . . . these military officers . . . are not people of any meaningful resources here in the states and they see an opportunity to make money. And what they do is they extort clients like ours or else their contracts are terminated, they're not renewed, they blackball them up in the chain of command." (Feb. 19, 2009 Hrg. Tr. at 19.)

either crime." *See* Apr. 5, 2010 Mem. Op. and Order [462] at 11.[2]  For the reasons stated below, the Court GRANTS IN PART Defendants' objections and narrows the scope of Judge Ashman's ruling.  However, the Court DENIES IN PART Defendants' motion insofar as it seeks authorization to present their proposed evidence of extortion as a defense to bribery and mail fraud.

## ANALYSIS

### I.  Distinguishing Bribery, Extortion, and General Economic Coercion

As an initial matter, it must be clarified that bribery and extortion are not mutually exclusive; Defendants can be guilty of paying bribes even if U.S. servicemen extorted them.  *See United States v. Lisinski*, 728 F.2d 887, 892 (7th Cir. 1984) (citing *United States v. Braasch*, 505 F.2d 139, 151 (7th Cir. 1974), *cert. denied*, 421 U.S. 910 (1975).  While stopping short of conclusively analyzing the issue, other circuits have also criticized the argument that extortion negates the intent required for bribery.  *See, e.g.*, *United States v. Lee*, 846 F.2d 531, 534 n. 1 (9th Cir. 1988) (where defendants argued that "the specific intent necessary to prove the crime of bribery under 18 U.S.C. § 201 was negated by their fears that they would lose their contract with the government if they did not pay off government inspectors . . . a plain reading of [the statute] casts doubt on [defendants'] economic coercion theory"); *United States v. Colacurcio*, 659 F.2d 684, 690 (5th Cir. 1981) ("[A]ppellants' insistence that extortion can be a defense to bribery is incorrect. . . . even if the appellants were subjected to extortion, they can still be convicted on the bribery charge."); *see also United States v. Labovitz*, 251 F.2d 393, 394 (3d Cir. 1958) ("[T]o

---

[2] While the parties' briefs do not explore the applicability of an economic duress defense in the context of mail fraud, the Court addresses the issue in response to the magistrate judge's holding on the matter.  Under 18 U.S.C. § 1341, a person must act with the purpose of "devis[ing] or intending to devise any scheme or artifice to defraud" in order to violate the statute.

constitute the offense of attempted bribery it is immaterial whether the official action sought to be influenced be right or wrong. . . . The statute is violated when a bribe is given . . . regardless of the occasion therefor, provided it is done with the requisite intent and . . . the acceptor . . . is a person of the sort described in the statute.").

Indeed, the Seventh Circuit in *United States v. Holzer* noted that, although bribery contains an element that extortion does not – namely a corrupt intent to influence an official act [3] – "[i]t could be argued . . . that every person who knuckles under to an extortionate demand does so intending to influence the extortionist not to carry out his threat, and that this should be enough to prove bribery." 840 F.2d 1343, 1351 (7th Cir. 1988). Nevertheless, "there is some authority that one can be a victim of extortion but not a briber, and that would surely be right in a case where the victim had paid the extortionist at the point of a gun . . . ." *Id.* at 1351-52 (citing *United States v. Shober*, 489 F. Supp. 393, 403 (E.D. Pa. 1979); *Hornstein v. Paramount Pictures, Inc.*, 37 N.Y.S.2d 404, 412-13 (N.Y. App. Div. 1942), *aff'd*, 55 N.E.2d 740 (1944)).

Uncontroversially, this language suggests that a physical duress defense remains available to defendants charged with bribery. The cases cited by the *Holzer* Court also indicate that it is possible for a victim to comply with extortionate demands without corruptly intending to influence an official act. *See, e.g.*, *Hornstein*, 489 F. Supp. at 412-13 (where company paid a labor organization representative to prevent him from making good on his threat to call a strike

---

[3] "Extortion by wrongful use of fear of economic harm is established when the public official acts or wields the powers of office in such a way that it causes a victim to fear some form of retribution if payment of a demanded price is not forthcoming." *United States v. Stodola*, 953 F.2d 266, 271 (7th Cir. 1992) (citing *United States v. Davis,* 890 F.2d 1373, 1378 (7th Cir. 1989), *cert. denied,* 493 U.S. 1092 (1990)) (internal quotation marks omitted). Bribery, on the other hand, "contains an element that extortion does not: that money was offered with the intention of influencing the recipient." *United States v. Holzer*, 840 F.2d 1343, 1351 (7th Cir. 1988) (citations omitted); *see also Hornstein v. Paramount Pictures, Inc.,* 37 N.Y.S.2d 404, 412-13 (N.Y. App. Ct. 1942), *aff'd*, 55 N.E.2d 740 (1944) ("[T]he essence of bribery is the *voluntary* giving of something of value to influence the performance of *official duty* and here the giving of the money was not voluntary and it was not given to influence the performance of official duty."). Consequently, a victim of extortion can also be guilty of paying bribes, so long as he or she did so with the intent to influence an official act.

by the company's employees, the act was not voluntary or intended to influence the performance of an official duty, because the labor representative was not under any real or pretended legal duty to cause a strike.) [4]

It follows that Defendants should be permitted to present evidence showing that they did not act with the intent to corruptly influence an official act. In principle, evidence relevant to that purpose should not be categorically excluded simply because it touches on the topic of extortion or, more broadly, economic coercion. As explained below, however, Defendants do not benefit from this opening – at least not on the grounds thus far asserted – because their proposed evidence fails to disprove the corruptness of their intent.

### III. Permissibility of Defendants' Economic Duress Defense

The Seventh Circuit has yet to explicitly outline the parameters of a valid economic duress defense in the context of bribery charges under 18 U.S.C. §§ 201(b) and 371, or mail fraud under 18 U.S.C. § 1349. However, it has at least implied in dicta that economic coercion may serve as an affirmative defense to mail fraud.

In *United States v. George et al.*, the defendant in a mail fraud case argued that he only made kickback payments because he was the victim of extortion. The Seventh Circuit observed that "[u]nder some circumstances a threat of economic injury may constitute a defense, but not

---

[4] Courts differ on how to articulate the standard for acting "corruptly" under 18 U.S.C. § 201(b). Some circuits find that an individual acts "corruptly" within the meaning of the statute by intending to give something of value in return for an official act in *quid pro quo* fashion. *See, e.g.*, *United States v. Alfisi*, 308 F.3d 144, 149 (2d Cir. 2002) ("The 'corrupt' intent necessary to a bribery conviction is in the nature of a *quid pro quo* requirement; that is, there must be 'a specific intent to give . . . something of value *in exchange* for an official act.'") (quoting *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 404 (1999). Other circuits require that the bribe payer act with an awareness of the illegality of their conduct. *See, e.g.*, *United States v. Hsieh Hui Mei Chen*, 754 F.2d 817, 822 (9th Cir. 1985). Under either standard, a bribe payer can still act "corruptly" (that is, with knowledge of the unlawfulness of her actions and with the purpose of achieving a *quid pro quo* transaction) even if he or she was subjected to extortionate demands.

here." *See* 477 F.2d 508, 514 (7th Cir. 1973). The court explained that the defendant could not claim economic duress when he had no right to the contracts that he secured through bribery, nor any right to be protected from future competition. *Id.* at 515-16. The payment of bribes to secure a discretionary act can be contrasted against compliance with an extortionist's demand under a threat to deprive the victim of something to which he has a legal right, like an existing contract. *Accord United States v. Barash*, 365 F.2d 395, 401-02 (2d Cir. 1966) ("[I]f a government officer threatens serious economic loss unless paid for giving a citizen his due, the latter is entitled to have the jury consider this . . . as bearing on the specific intent required for the commission of bribery.")

The Seventh Circuit articulated a consistent rationale when interpreting the Illinois bribery law, which resembles the federal statute with regard to intent to influence. In *United States v. McPartlin*, the Seventh Circuit stated that "in a case where a discretionary or legislative decision . . . has been requested, the withholding of such action until a money demand is met could not negate the intent (to influence the performance of an official act) required by the Illinois bribery statute." 595 F.2d 1321, 1340 (1979) (quoting *United States v. Peskin*, 527 F.2d 71, 84 (7th Cir. 1975), *cert. denied*, 429 U.S. 818 (1976)).[5] Assuming for the sake of argument that a distinction existed between the defenses of duress and extortion, the Seventh Circuit additionally observed that the defendant could not have asserted an extortion defense due to his lack of legal entitlement to the benefits he sought to obtain through bribes. *Id.* at 1341-42.

In the instant case, Defendants are charged with paying bribes to secure discretionary acts on the part of co-defendants Christopher West and Patrick Boyd, both U.S. military officers

---

[5] The Seventh Circuit found that the trial court's jury instructions were consistent with this position. The instructions read, "[i]f one does not believe he is legally entitled to receive the thing in question, then, no matter how much he needs it and no matter how great the economic loss one might suffer by not receiving it, there can be no legal justification for paying a public official to get it. Such a payment is bribery, pure and simple." *McPartlin*, 595 F.2d at 1339.

serving at Bagram.[6] The above case law suggests that an extortion defense is unavailable to Defendants, if it is premised on the argument that the officers' conduct, in demanding bribes as the sole means of winning discretionary contracts, somehow excuses the Defendants' unlawful complicity. Defendants nevertheless seek to offer the following: (1) evidence that Charles Finch, a non-commissioned officer who purportedly worked with West, previously terminated a lawfully obtained, pre-existing line haul contract with AZ when the company refused to make extortion payments demanded by Finch; (2) statements by West that he "was not going to leave Afghanistan without making money" and that he extracted payments from military contractors so that they could "keep their contracts;" (3) evidence that West conceived and orchestrated the indicted conduct; (4) evidence of other, as yet unspecified attempts at extortion by West and various warlords; (5) evidence that West and his co-conspirators prevented AZ from shipping products to end military users for purchase orders, thereby preventing Defendants from collecting payment to recoup their costs, in order to compel Defendants to comply with extortionate demands. *See* Def. Resp. Br. [395] at 4-5.

Propositions #1, #4, and #5 are irrelevant. Defendants' state of mind when responding to extortionate conduct threatening the disruption of unrelated line haul contracts, purchase orders, or other commerce has no bearing on whether Defendants paid bribes to influence the official action described in this indictment, i.e. the assignment of future contracts for bunkers and barriers. Propositions #2-3 would at most establish that West and his crew were avaricious extortionists who conditioned the bunkers-and-barriers contracts on the receipt of hefty bribes. However, West and Boyd's extortionate conduct does not affect or diminish the probability that Defendants paid those bribes with the intent to influence official acts, as one can bribe and be

---

[6] Defendants argue that they were well-qualified to bid for and receive the bunkers-and-barriers contracts, but never argue that they were legally entitled to them.

extorted simultaneously. Furthermore, to the extent that a duress defense may exist in this circuit, it is unsupported here because the alleged demands only affected Defendants' chances of securing discretionary official acts, not preserving rights to which they were legally entitled.[7]

Thus, the effect of Judge Ashman's ruling is correct, in that it precludes Defendants from arguing that (a) the mere fact that U.S. servicemen conditioned the award of bunkers-and-barriers contracts on bribes negates Defendant's intent to commit bribery when seeking those contracts, or that (b) evidence of Defendants' intent when responding to other instances of extortion by U.S. servicemen is relevant to their intent when paying the bribes described in the instant indictment. While Judge Ashman did not state his conclusion in such specific terms, such was the end result. That aspect of his ruling will not be disturbed.

### III. Economic Duress as a Defense to Bribery and Mail Fraud, Broadly

#### A. The Government's Argument

Citing *Dixon v. United States*, 548 U.S. 1 (2006), the Government argues that economic duress evidence cannot form a defense to bribery because it cannot negate the specific intent required for the offense. In *Dixon*, the Supreme Court observed that duress "normally does not controvert any of the elements of the offense itself" because, in theory, the defense permits

---

[7] Stating their argument differently, Defendants assert that they necessarily lack a "corrupt" intent under 18 U.S.C. § 201 because their bribery was motivated by a desire to "prevent corrupt military officers from (a) unlawfully terminating pre-existing contracts, (b) blackballing Defendants from participating in a lawful contract bid process, or (c) out of fear that the officers' alliance with warlords imposed a threat of death or serious physical harm." Def. Resp. Br. at 8. As to (a), if the instant indictment had charged Defendants with paying bribes to save pre-existing line haul contracts or purchase orders, they might have been entitled to submit evidence that they paid West to stop him from illegally (and unofficially) detaining Defendants' trucks, terminating contracts to which they were legally entitled, or otherwise prohibiting Defendants from completing their contractual duties. But Defendants are not charged with bribery for these incidents, so evidence of extortion in these instances is irrelevant. As to (b), Defendants do not claim that they had a legal right to bid for the bunkers-and-barriers contracts, nor is there any indication that they were legally entitled to a bid. Because the collection of bids and assignment of these contracts was a discretionary official act on the part of West and Boyd, bribers paying to secure them cannot benefit from a duress defense. Finally, the magistrate judge's holding does nothing to prevent Defendants from investigating or arguing a physical duress defense pursuant to option (c).

"coercive conditions or necessity [to] negate[] a conclusion of guilt even though the necessary *mens rea* was present." *Id.* at 7 (citing *Bailey,* 444 U.S. 394, 402 (1980)). After analyzing the *mens rea* required by the criminal statutes at issue in *Dixon*, the Supreme Court concluded that "the defense of duress does not negate a defendant's criminal state of mind when the applicable offense requires a defendant to have acted knowingly or willfully." *Id.* at 7. Because the defense did not speak to intent, the Court held that the prosecution need not disprove the existence of duress. *Id.* at 6. Such is not the case when the *mens rea* specifically calls for an absence of duress, as with crimes requiring malice, defined as "[t]he intent, *without justification or excuse,* to commit a wrongful act." *Id.* at 6 n. 4 (emphasis added).

When ruling in the Government's favor, Judge Ashman held that *Dixon* abrogated *United States v. Toney*, the case most supportive of Defendants' position. *See* 27 F.3d 1245 (1994). In *Toney*, the Seventh Circuit held that physical duress could qualify as either an affirmative or a substantive defense, depending on the *mens rea* of the crime charged. *Id.* at 1251. When offered as a defense to a specific intent crime, duress negates intent and thus serves as a substantive defense, such that "proof of the absence of coercion becomes an essential element of the crime" requiring proof beyond a reasonable doubt. *See id.*[8]

Although friction exists between *Dixon* and *Toney*, the Seventh Circuit has yet to overrule its method for variably defining duress as either a substantive or affirmative defense according to the *mens rea* of the offense. In relevant part, the Seventh Circuit has thus far

---

[8] *Toney* conflicts with *George*, which indicates that economic duress can be an affirmative defense to mail fraud charges. But mail fraud is a specific intent crime, whereas *Toney* establishes that coercion is a substantive defense when asserted against specific intent crimes. *See United States v. Howard*, No. 09-3840, 2010 WL 3385175, at *4 (7th Cir. 2010) ("[i]ntent to defraud requires a wilful act by the defendant with the specific intent to deceive or cheat, usually for the purpose of getting financial gain for one's self or causing financial loss to another."). To add to the confusion, the Seventh Circuit recognizes economic coercion or duress as an affirmative defense to conspiracy, which is a specific intent, albeit inchoate, offense. *See MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc.,* 62 F.3d 967, 980 (7th Cir. 1995).

applied *Dixon* narrowly, to establish that "[a]ffirmative defenses of justification and excuse do not negate criminal intent when the required mental state is that the defendant acted knowingly." *United States v. Jumah*, 493 F.3d 868, 873 (7th Cir. 2007).[9] The Court of Appeals has yet to extend *Dixon* to a duress defense for a crime whose *mens rea* is "corruptly" acting to "influence an official act." Dicta in *Toney* suggests that, at least in some factual circumstances, duress may negate the intent requirements of 18 U.S.C. § 201. *See Toney*, 27 F.3d at 1251. Until such time as a contrary indication arises, this Court defers to the Seventh Circuit's narrow interpretation of *Dixon*. Under this precedent and *Toney*, coercion can negate intent for crimes whose *mens rea* is defined with a certain specificity.

Even then, the question of whether *Dixon* or *Toney* controls only affects the burden of proof at trial. Neither case comments on the viability of economic duress as a defense to bribery or mail fraud. Notably, even *Dixon* does not support Judge Ashman's blanket ban on economic coercion as an affirmative defense to the charged crimes. *Dixon* only holds that, where duress fails to negate intent, it cannot serve as a *substantive* defense. *See* 548 U.S. at 6-8. *Dixon* did not address whether economic duress can ever be asserted as an affirmative defense.

In sum, the case law does not squarely support the Government's position. *Toney* does not preclude the possibility that economic coercion can serve as a substantive defense to bribery or mail fraud, and even *Dixon* does not prevent it from being asserted as an affirmative defense. Granted, insofar as such a defense might exist, the type of economic coercion thus far alleged by Defendants is insufficient to support a legitimate defense under the reasoning of *George*,

---

[9] According to the Seventh Circuit, *Dixon* as a whole establishes that "when a statute is silent on the question of affirmative defenses and when the affirmative defense does not negate an essential element of the offense, we must presume that the common law rule that places the burden of persuasion on the defendant reflects the intent of Congress." *Id.* at 873.

*McPartlin*, and *Peskin*. Nevertheless, economic duress might be valid if asserted on other factual grounds.

### B. Defendants' Argument

Defendants, relying on dicta in *Toney*, argue that this circuit conclusively recognizes economic duress defenses to bribery. In *Toney*, the Seventh Circuit cited the Ninth Circuit's *United States v. Lee*, 846 F.2d 531 (9th Cir. 1988), to support the proposition that coercion is a substantive defense when asserted against §§ 201(b) and 371. *See Toney*, 27 F.3d at 1251. The Seventh Circuit noted that, "because the specific intent required [in *Lee*] was negated by the defendants' fears that they would lose their contract with the government if they did not pay off government inspectors[,] [t]he burden of disproving coercion was on the government." *Id.* (internal quotation marks omitted).

Two problems arise with Defendants' argument. Firstly, the *Lee* Court only assumed for the sake of argument that economic coercion was a valid defense to bribery charges. *Id.* at 535. The Ninth Circuit sidestepped the issue with the explicit criticism that "several circuits have rejected the argument that economic coercion is a defense under § 201 when the briber is merely paying for that which he is entitled anyway." *Id.* at 534 n. 1 (citing cases). Secondly, the defense in *Lee* alleged that government officials threatened to disrupt existing contracts – that is, rights to which the defendants were legally entitled, and not contracts whose discretionary award was not within defendants' rights to claim. Thus, even assuming that economic duress can stand as a defense to bribery where the extortionist threatens to revoke a right to which the defendant believes himself legally entitled – a position that other circuits are reluctant to adopt – Defendants have not alleged facts that would suffice to establish such a defense.

Given the dearth of case law on the subject, neither permitting nor precluding an economic duress defense directly conflicts with Seventh Circuit precedent. On the one hand, other circuits seem to disapprove of the viability of any form of economic duress as a defense to bribery. *See, e.g.*, *Lee*, 846 F.2d at 534 n. 1; *Labovitz*, 251 F.2d at 394; *Colacurcio*, 659 F.2d at 690; *Alfisi*, 308 F.3d at 150 n. 1. On the other hand, dicta in *George* implies that the Seventh Circuit may support a contrary position where legal rights are threatened. *See* 477 F.2d at 514. At this point, there is no need to decide the issue until it is properly before the Court. *See United States v. Miller*, 340 F.2d 421, 425 (4th Cir. 1965) (declining to decide whether extortion was a defense to a § 201 violation because the evidence did not support an extortion claim in the first place; "Miller by his payments was purchasing . . . favored treatment from Lawrence. Fear of losing his illegal advantage if the payments were discontinued was not extortion"); *accord McPartlin*, 595 F.2d at 1339-40 (leaving open the possibility that, under Illinois law, economic duress may provide a defense for someone who "believes himself to be 'legally entitled' to have the bribed official take action," but deciding that the defense could not be asserted by a defendant who paid a bribe to influence a discretionary official decision). If a valid economic duress defense at all exists in this circuit, it would at least require that Defendants act under the threat of losing something to which they felt legally entitled. Defendants have not argued facts consistent with such a scenario.

**IV. Conclusion**

In conclusion, the Court GRANTS in part and DENIES in part Defendants' objections. The Court narrows the scope of Judge Ashman's ruling to the relevant issues. Specifically, Defendants are precluded from arguing that (a) the fact that U.S. servicemen conditioned the

discretionary award of bunkers-and-barriers contracts on bribes negates Defendant's intent to commit bribery when seeking those contracts, or that (b) evidence of Defendants' intent when responding to other instances of extortion by U.S. servicemen is relevant to their intent when paying the bribes described in the instant indictment.

Enter:
/s/ David H. Coar

_____
David H. Coar
United States District Judge

**Dated:** October 15, 2010